CAMBRIDGE APARTMENT BUILDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102205.   Promulgated May 29, 1941.

*D. A. Busby, C. P. A.*, for the petitioner.
*David Altman, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies as follows:

| Fiscal year ended— | Income tax | Excess profits tax |
|---|---|---|
| April 30, 1936 | $484. 33 | $138. 29 |
| April 30, 1938 | 630. 49 | 491. 57 |

The only issue for decision is whether or not amounts assessed upon and collected from stockholder-tenants in excess of operating expenses and for the purpose of retiring the bonded indebtedness were income or contributions of capital. The Board adopts the stipulation as its findings of fact.

The petitioner was organized under the laws of Illinois in 1927. It owned and operated an apartment building which was occupied by its stockholders. The bylaws provided that all expenses for taxes, mortgage indebtedness, maintenance, and operation of the building should be met by assessments against the stockholders in proportion to their holdings. The capital stock consisted of 21,430 shares of a par value of $10 each. The petitioner acquired the building subject to an issue of mortgage bonds in the amount of $325,000, due June 1, 1934, with interest. The stockholders elected a board of directors, who determined annually the amount of the assessment necessary to cover the operating expenses, bond interest, and amortization of bonded indebtedness. They included this information in an annual budget.

Payments of principal on the mortgage became in default and a petition under section 77B of the Bankruptcy Act was filed on

June 14, 1935. A plan of reorganization was completed and approved by the court on September 17, 1935, whereby the date of the bond issue was extended to June 1, 1943, in consideration of the corporation agreeing to pay, during the extension, all amounts collected in excess of the current operating expenses and agreeing, further, that the assessment on the stockholders would not be reduced during the period of extension. The plan approved by the court further provided that all funds coming into the hands of the depositary, after payment of interest, should be used to purchase and retire bonds of the petitioner at the lowest price obtainable.

The budget was discontinued after the corporation was reorganized under section 77B of the Bankruptcy Act. The assessments immediately prior to the court order had been $1.63 per share per annum. The court provided that assessments of not less than $1.63 per share per annum should be made during the period of the extension of the bonds. Assessments in that amount were made for 1936 and all years thereafter.

There was an excess of assessments and rents over operating expenses for each of the taxable years, and in each year a larger amount was paid to retire bonds of the corporation.

The petitioner contends that the actual amount of the excess of assessments collected from stockholders over operating expenses and used to retire bonds was a capital contribution to the corporation and not income of the corporation. It cites *Paducah & Illinois Railroad Co.*, 2 B. T. A. 1001, and *874 Park Avenue Corporation*, 23 B. T. A. 400. Two railroads, in the *Paducah* case, had organized a bridge corporation to provide bridge facilities across the Ohio River, and agreed to make payments to the company to cover its expenses and to provide a sinking fund for the retirement of its bonds. These contributions were to be in proportion to the use of the bridge and the bridge company was to issue its preferred stock to the railroads in return for payments which went to retire bonds. The Board said that the contributions, in so far as they were to be used for the retirement of debt, were contributions of capital for which stock was to be issued, and it was immaterial whether or not stock was actually issued at the time. The Board said in the *874 Park Avenue Corporation* case:

The only issue is whether the assessments paid to the petitioner by stockholder-tenants pursuant to the terms of their leases to be used by the petitioner for the amortization of mortgages on the apartment house and so used constitute paid-in surplus capital to the petitioner or income in the nature of rent. We are of the opinion that the assessments so made and employed were contributions of capital to the petitioner and as such are nontaxable.

Counsel for the respondent attempts to distinguish the latter case on the ground that there was an understanding in that case prior

to the time the assessments were made that they would be used to retire indebtedness, whereas here, he says, there was no such agreement. The cases are not distinguishable on this basis. The stockholders in the present case had an understanding in prior years, as indicated by budgets, that a part of the assessments would be used to retire indebtedness. Although the budget was abandoned after the reorganization under section 77B, nevertheless, the plan of reorganization approved by the court expressly provided that all amounts collected by assessment which were not needed to defray operating expenses would be used to retire bonds. The amounts here in question were collected by assessment pursuant to this order of the court and were used to retire bonds. Therefore, following the above cited cases, we hold on this point for the petitioner.

*Decision will be entered under Rule 50.*